**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO:**

ADAM M. LUDWIN, ESQ.,
LUDWIN LAW GROUP, P.A., and
JOANNA ZEITLIN,

      Plaintiffs,

vs.

MATTHEW B. PROMAN, aka
"MATT" PROMAN

      Defendant.
_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW Plaintiffs, Adam M. Ludwin Esq. (hereinafter "Mr. Ludwin"), Ludwin Law Group, P.A. (hereinafter "LLG"), and Joanna Zeitlin (Ms. Zeitlin), by and through their undersigned counsel, and hereby files this Complaint for Damages and Injunctive Relief against Defendant, Matthew Brian Proman (hereinafter "Defendant"), and alleges as follows: aka Matt Proman

**PARTIES**

1.    Plaintiff, Ludwin Law Group, P.A., is a Florida corporation, registered to conduct business within the State of Florida, and is otherwise *sui juris.*

2.    Plaintiff, Adam M. Ludwin, Esquire, is a resident of the State of Florida, and is otherwise *sui juris.*

3.    Plaintiff, Joanna Zeitlin, is a resident of the State of Florida, and is otherwise *sui juris.*

4. Defendant, Matthew B. Proman, upon information and belief, is a resident of the State of California.

**JURISDICTION & VENUE**

5. The Federal Court in the Southern District of Florida has jurisdiction over this matter under 28 U.S.C. § 1332.

6. All Plaintiffs are of different citizenship than the Defendant.

7. The amount in controversy greatly exceeds the $75,000.00 jurisdictional requirement.

8. This cause has been timely filed as required by the Florida's applicable statute of limitations: §95.11(2)(o); §95.11(2)(p); and 95.11(4)(g), and the last actions giving rise to each and every claim made by Plaintiffs all occurred within the State of Florida.

9. This Court has personal jurisdiction over Defendant as Defendant committed tortious acts within the State of Florida and Defendant posted false and defamatory statements online that were directed at residents of the State of Florida and were accessed by third parties within the State of Florida.

10. Furthermore, the majority of the witnesses and evidence in this cause is located within the Southern District of Florida.

**FACTUAL BACKGROUND**

11. This matter arose in relation to a Federal action in the Eastern District of New York, wherein the undersigned represented third parties in connection with a vessel arrest owned by Defendant, Matthew Proman.

12. On September 26, 2018, Defendant had published the first of many completely

false, malicious, and inflammatory internet post about Mr. Ludwin, which included Mr. Ludwin's name, email address, cell phone number, business address, on "ripoffreport.com" and on"complaintsboard.com" and included the following completely false statements:

   a. "Adam M Ludwin scammed me out of fees, and defrauded me compromising the future of our company."

   b. "Adam M Ludwin from Ludwin Law Group in Delray Beach, FL is responsible for nearly $2 million in losses related to a false loan application and other fraudulent conduct, including stealing our customers banking information and opening credit cards in their names."

   c. "…Adam M Ludwin, executed schemes to defraud our banking institution through a series of false loan applications for boats allegedly sold and concocted a bankruptcy scheme to conceal property rightfully belonging to the creditors of the business."

   d. …Ludwin schemed by luring our clients by listing their yachts/boats with Gatsbyyachts.com or purchasing an already listed yacht to potential buyers. Ludwin would then collect the victims social security number, date of birth and banking information and populate that data with banks to issue credit fraudulent credit cards. Over seven victims have already come forward to us." and

   e. "Think twice befoe [sic] retaining Adam M ludwin for his services, i hope this post saves more people from becoming victims of Ludwin."

13. The urls for the foregoing sites are:

   a. https://www.ripoffreport.com/reports/adam-m-ludwin-ludwin-law-group-pa-85-se-4th-ave-suite-105-delray-beach-fl-33483-561-613-7392-

      adamludwinlawcom/delray-beach-florida-33483/adam-m-ludwin-Iudwin-law-group-pa-85-se-4th-ave-suite-105-del ray-beach-fl-33483-1462591; and

  b. https://www.complaintsboard.com/complaints/adam-m-ludwin-ludwin-law-group-creating-false-loanapplications-and-other-fraudulent-conduct-c1058821.html.

14. On September 27, 2018, the same day the defamatory post was discovered, Mr. Ludwin sent Defendant a "cease and desist" demand via email to Defendant's attorney at the time.

15. Only four days after Defendant was served with Mr. Ludwin's cease and desist letter, and that Defendant's false post did not create the desired outcome, Defendant defiantly and maliciously published a succession of escalating false and defamatory posts.

16. On October 1, 2018, Defendant escalated his accusations against Mr. Ludwin and sought to compound the damage inflicted against Mr. Ludwin by publishing additional false and defamatory statements on "ripoffreport.com" as follows:

17. "Adam Ludwin … has a history with controlled substances…"

18. "It is not clear how he is still a member of the FL bar and holds an active law license but its clear that he shouldn't be practicing law…"

19. The foregoing url is https://www.ripoffreport.com/reports/adam-ludwin-esq/delray-beach-florida-33483/adam-ludwln-esq-convicted-attomey-delray-beach-florlda-1463141

20. As if attacking Mr. Ludwin was not sufficient, Defendant then escalated the damage and undue pressure against Mr. Ludwin by attacking and publishing false and malicious posts regarding Ms. Zeitlin, Mr. Ludwin's then fiancé and now wife, who had nothing to do with the Federal case against Defendant beyond the fact that she was Mr. Ludwin's fiancé, and thus became

a target of Defendant, in an attempt to harass, intimidate, and subject Mr. Ludwin to such an overwhelming degree of shame that Mr. Ludwin would either comply with Defendant's demands or withdraw as an attorney on the case altogether, thus leaving Mr. Ludwin's clients in the Federal case in an extremely disadvantaged and vulnerable position.

21. Also on October 1, 2018, Defendant reprehensibly and maliciously began publishing false and defamatory posts regarding Ms. Zeitlin, on numerous websites "reportcheatingwife.com" and "Liarsandcheaters.com" which included the following false statements:

   a. "Joanna Zeitlin from West Palm Beach Florida was (or still is)is an escort / prostitute that has slept with over 500 men, most married, and has been working the game for the past 10 years mostly in South Florida. She has allegedly gained financial success in the escort industry and is known in the secret community for her "kinky role playing services" and "unique acts and techniques" and making her clients fantasies come true."

   b. "Her current boyfriend … Adam Ludwin who was probably also one of her former clients. Both are known throughout West Palm Beach and Del Rey Beach, FL for their "anything goes" swinger parties. one would think Joanna currently has enough excitement in her life and her escort life is just pimping her."

22. The urls for the foregoing post is https://reportcheatingwife.com/joanna-zeitlin-west-palm-florida/; liarsandcheaters.com/Joanna-zeitlin-west-palm-fl.html

23. On October 8, 2018, Defendant reposted the foregoing false statements regarding Ms. Zeitlin and published them on "thedirty.com" which included the following false statements:

24. The url for the foregoing post is https://thedirty.com/city/west-palm-beach/joanna-

zeitlin/#post-2273376.

25. On October 3, 2018, Defendant made false statements regarding Mr. Ludwin and published them on "cheatland.com" which included the following false statements:

a. "Adam Ludwin from Ludwin Law Group … is armed and dangerous."

b. "His behavior is aggressive/ erratic which may indicate he is under the influence when engaging with clients/prospects."

c. "I was introduced to him by ****, from **** **** Group, who I later found that is also involved in scamming his clients. They are probably working together."

26. The url for the foregoing post is http://www.cheatland.com/stay-away-from-ludwin-law-group.html.

27. On October 9, 2018, Defendant made false statements and published them on "exposecheatersonline.com" which included the following false statements:

a. "Some people claim Joanna Zeitlin from West Palm Beach Florida was (or still is)is an escort I prostitute that has slept with over 500 men, most married, and has been working the game for the past 1 0 years mostly in South Florida …"

b. "She has allegedly gained financial success in the escort industry and is known in the secret community for her "kinky role playing services" and "unique acts and techniques" and making her clients fantasies come true…"

c. …"recently Joanna quietly took on a new …Miami client seeking discrete sexual services later … to learn that her new client was one of her current boyfriend Adam Ludwin's former college friends …"

d. "Adam found out when his friend told him about this new escort he has been seeing gave him herpes" and

e. "Don't be fooled by her polished clean-cut look she is approachable for the right

Price."

28. The url for the foregoing post is https ://exposecheatersonline.com/joanna-zeitlin-west-palm-florida/.

29. Also on October 9, 2018, Defendant published foregoing false statements and published them on "reportcheatingonline.com" which included the following false statements:

30. The url for the foregoing post is https://reportcheatingonline.com/joanna-zeitlin-west-palm-florida/.

31. In October of 2018, Defendant also made false statements and published them on "internetcheaters.com."

32. The url for the foregoing post is https://intenetcheaters.oom/cheaters/Joanna-zeitlin-west-palm-florida/.

33. Again on October 18, 2018, Defendant published the foregoing false statements on "reportcheater.com."

34. The url for the foregoing post is https://reportcheater.com/joanna-zeitlin-west-palm-florida/.

35. On October 8, 2018, Defendant made false statements and published them on "cheaterreport.com" which included the following false statements:

   a. "a guy who is associated with criminals … believe it or not this [sic] is a (still) licensed attorney from South Florida called Adam Ludwin, who loses his temper easily and has been involved in numerous "incidents" and that is usually seen with working girls even though he is dating Joanna Zeitlin, account executive from *********."

   b. "if you see him with girls in a bar please call his girlfriend Joanna at (561) ***-

\*\*\*\* or just email her at \*\*\*\*\*\*\*\*\*\*\*\*\*@\*\*\*\*\*.com"

36. The url for the foregoing post is https://cheaterreport.com/adam-ludwin-esg-dangerous/.

37. On October 8, 2018, Defendant made false statements and published them on "shesahomewrecker.com" which included the following false statements:

38. The url for the foregoing post is https://shesahomewrecker.com/joanna-zeitlin-west-palm-florida/.

39. Defendant also created fraudulent accounts under Mr. Ludwin's identity in "Linkedin" and "AVVO" in attempt to post false information about Mr. Ludwin and further damage his reputation.

40. During litigation, Defendant, Matthew Proman, was represented by counsel for the majority of the case, also defended the matter, *pro se,* for a period.

41. While representing himself, *pro se,* Defendant made repeated physical and other threats against Mr. Ludwin, demanding that Mr. Ludwin conformed to Defendant's demands to force Mr. Ludwin's clients to settle that case.

42. Defendant's threats were reported to the Federal Bureau of Investigation ("FBI"), who investigated Plaintiff, Adam M. Ludwin, Esq.'s, complaint against Defendant and found the complaint credible.

43. Thereafter, the FBI initiated a formal investigation into Defendant's actions, which included the FBI recording phone calls between Defendant and Mr. Ludwin, which commenced in the afternoon on April, 12, 2019.

44. On April 12, 2019, just prior to a hearing scheduled to be held before Judge Azrack, the undersigned had two phone calls with Defendant that consisted of Defendant threatening the

undersigned that if Plaintiffs did not accept a reduced offer or walk away from the case, then Defendant would be somehow attack Plaintiff, the undersigned, and the undersigned's family. The undersigned advised Defendant that Defendant's behavior was egregious and that it would be reported to Judge Azrak at the upcoming hearing. Concerned that Defendant's actions would be disclosed to the Court, Defendant, planned and implemented a fraudulent and criminal scheme wherein Defendant file a false police report stating that the undersigned threatened to murder Defendant. In fact, Defendant false reported to the Beverly Hills Police Department that Mr. Ludwin stated to Defendant, "I'll put a bullet in your f*cking head and you won't be missed." *See* Copy of the foregoing Police Report filed by Defendant with the police attached hereto as "Composite Exhibit A."

45. On April 15, 2019, Defendant took the false police report and filed a fraudulently filed a complaint for a restraining order against Mr. Ludwin, Case No. 19STR002452, filed in the Super Court of California, County of Los Angeles which was directly based on the allegations in the aforementioned false police report, and Defendant even presented the false report as evidence for the Court to grant an injunction against Mr. Ludwin. A copy of Defendant's fraudulent Complaint for Injunctive Relief filed by Defendant, against Mr. Ludwin, is attached hereto as "Composite Exhibit A."

46. Mr. Proman also made the following false statements under oath in his complaint for injunctive relief against Mr. Ludwin:

   a. "After a long phone conversation Adam Ludwin began to turn to threats of specifically killing me by shooting me in the head when I exited my building while going to walk in the morning. Adam said he knew exactly where I lived, and he had nothing to live for. He said if he didn't get his fees he would shoot me in the head

and I would never see him coming. He said he knows how to kill me and not get caught." Id.; and

b. "Adam Ludwin specifically said he would use his gun and shoot me in the back of the head while going to work. He said he would make sure to make it painless by shooting me in the head and not in my chest." Id.

47. In fact, a preliminary injunction was procured against Mr. Ludwin, based on the fraudulent evidence presented by Defendant, *under oath and penalty of perjury*, before Mr. Ludwin had even received notice of the filing of the proceeding. A copy of the Order is attached hereto as "Composite Exhibit A."

48. If was not enough that Mr. Ludwin had been subjected to a fraudulent police report and a fraudulently procured injunction, on May 17, 2019, Defendant took both of the foregoing fraudulent procured police report and injunction and utilized them as evidence supporting a bar complaint filed by Defendant against Mr. Ludwin, with the Florida Bar, which was also fraudulently filed by Defendant *under penalty of perjury*.

49. It was at this point, that the FBI had observed and documented all that it needed to see from Defendant, Matthew Proman.

50. On August 2, 2019, the FBI officially authorized the undersigned to discuss all of my personal knowledge concerning the investigation into Defendant, Matthew Proman's, criminal actions. Moreover, the FBI also released the recordings from the conversations that took place between Defendant, Matthew Proman, and the undersigned on April 12, 2019, the date that Defendant had represented to the Beverly Hills Police, the Superior Court of California and the Florida Bar under penalty of perjury, that Mr. Ludwin threatened to murder him.  A copy of the cover letter from the Assistant United States District Attorney, and a full transcript of the

recordings from very same telephone calls at the heart of Defendant's numerous complaints against Mr. Ludwin are attached hereto as "Exhibit B"

51. It is important to note that the attached recordings are of very same conversations which Defendant, Matthew Proman, reported to the police that the undersigned allegedly threatened to shoot him in the head if I was not paid my fees, and which Defendant, Matthew Proman, later certified as truthful *under penalty of perjury* when he sought an injunction against Mr. Ludwin based on completely manufactured and fraudulent allegations in the Superior Court of California, and which Defendant again certified as truthful *under penalty of perjury* for a final time when he filed a bar complaint against Mr. Ludwin with the Florida Bar. *See* copies of the full transcripts of both phone call recordings between Defendant and Mr. Ludwin on the date in question attached hereto as "Exhibit B."

52. In order to further elaborate on Defendant's intentions, it may be more effective to allow Defendant, Matthew Proman, to explain his intentions in his own words.

53. The following are quotes stated by Defendant, Matthew Proman, from the transcripts of the aforementioned FBI recorded telephone calls wherein Defendant had intentionally, falsely and maliciously represented to multiple governmental agencies that Mr. Ludwin threatened to shoot him in the head on April 12, 2019 an or about 5:18 pm and 5:39 pm Eastern Standard Time:

   a. "I'm working on making sure your life is very difficult, that's what I'm working on right now." *See* Page 1 of Exhibit B at 1:17.

   b. "… how does this sound? I want you to suffer with him the way you've made me suffer. I want you to feel the pain and the burn for years. I want you to suffer." *See* Page 1 of Exhibit B at 1:38.

   c. "When someone f*cks me I'll spend hundreds of thousands of dollars and years of my life to make sure that they feel pain. That's who I am, that's who I was born, that's how I'll die, I don't care. Do you understand? And right now when I close my eyes I

  think about what I can do to make sure that you and [Plaintiff] are held accountable. What are all the different ways I can make it for years, for decades and the people around you, held accountable for what you did to me. That's what I think about-" *See* Page 2 of Exhibit B at 3:33.

d. "It'll happen to you worse, in two or three years, it doesn't matter. I'll come out of the woodwork. You won't know it's me. You won't know, you won't see, I don't give a f*ck." *See* Page 3 of Exhibit B at 4:21.

e. "Listen, whatever you do, whatever you bring up to the judge and do, I'm [inaudible 00:06:12] and I'm telling you for the rest of your life, going to deal with the consequences …" *See* Page 3 of Exhibit B at 6:09.

f. "Listen, at the end of the day one or two things are going to happen. I'm going to win and I'm still going to get back at you and your client. Or I'm going to lose and I'm going to back at you twice as hard. Either way, because of the way you're treating me, I ain't going no where. This to you, is the worst mistake of your life if ever taken is what gets me. I'm telling you that now. From ten years from now, in ten years, when your life is in a completely different place, you'll remember me, you'll know me. You'll remember this number on the phone. Because I'm going no where. I'm going no where in your life. I'm sitting there quiet now. I'm sitting like I'm f*cking right in the corner. I'm not going no where, ans the same to Shane." *See* Page 5 of Exhibit B at 8:15.

g. "I don't care ... Listen, you just keep talking buddy. You keep talking because you got a lot to lose. I'm the guy that's going to be there to hold you accountable. I'm going to hold you accountable and it's okay. At this point I don't care about the money. You know what I care about? Holding you accountable, looking you in the face ten years from now and you looking me dead in my eyes and you f*cking looking at me like you saw a ghost. Then I'm going to say "yeah, it was worth the money" that's what I'm going to do…" *See* Page 5 of Exhibit B at 9:15.

h. "Adam, listen you little b*tch, we already talked about this. Don't talk to me like snotty. Don't do it. Because every time you do something to me I'm checking a box. You're checking a box on your life." *See* Page 6 of Exhibit B at 10:22.

i. "… I don't give a f*ck about you or anyone closest to you either mother f*cker. So f*ck you, I don't care." *See* Page 6 of Exhibit B at 10:35.

j. "Go kiss your f*cking fat b*tch wife on her face when you get home tonight. You think about me. You think about that you f*cking f*ggot. You think about that. You think about that. I ain't going no where in your f*cking life." *See* Page 7 of Exhibit B at 11:52.

k. "I'm going to spend the next five hours painting your future you f*cking f*ggot. You understand that? I ain't going no where. When this is all said and done I'm going to be

  right in your f*cking face. You f*cking f*ggot." *See* Page 7 of Exhibit B at 12:10.

l. "Tell your girlfriend she's involved too. Bye bye. And your wife and your f*cking family and everyone else is going to suffer the way I suffered through this court." *See* Page 8 of Exhibit B at 12:51.

m. "I'm going to take every resource and person and everything I have to develop a strategy to lean on you mother f*cker…" *See* Page 8 of Exhibit B at 13:11.

n. "Whatever your doing to me, good, record me, I don't give a f*ck what you do. I don't care what you do because the more you do to me, the more I'm doing to you. I'm not going anywhere. You think I'm kidding. I don't care if I sit in jail for six months, I don't care if I f*cking lose this case. You're going down mother f*cker, you're going down. I don't care. And so is Shane that piece of sh*t." *See* Page 8 of Exhibit B at 13:11.

o. "Listen, listen, I got you buddy. I got you. I own you mother f*cker. I own you. This is going on for twenty years. I own you mother f*cker." *See* Page 8 of Exhibit B at 14:30.

p. "Let me tell you something buddy, your life is now forever changed. Never call my phone again. I want you to remember my f*cking voice right now. And I want you to think every f*cking time for the next five, ten years, how your life has changed. Because I'm going to change it for you." *See* Page 9 of Exhibit B at 15:08.

54. Ultimately, Defendant achieved his goals. Mr. Ludwin was forced to leave the Federal case in New York due to a conflict of interest, that was a direct result of Mr. Proman's foregoing actions, which resulted in significant loss of wages to Mr. Ludwin because he had taken the Federal case on a contingency basis and, despite the hundreds of hours spent on the case, and a potential recovery in excess of $300,000, Mr. Ludwin was not able to see the case through to the end and recovered no fees whatsoever, die to Defendant's actions.

55. While Defendant has testified under oath that he was not directly or directly responsible for the false website posts, a portion of the website posts were traced back to an ip address that was traced directly to his home address through subpoenas issued in the other Federal case. A copy of the IP address trail is attached hereto as composite "Exhibit C."

56. Mr. Ludwin has also lost potential clients and job offers as a result of the posts on the internet.

57. Furthermore, the posts on the internet were made not long before Mr. Ludwin and Ms. Zeitlin's wedding, which took place in November of 2019. Consequently, Mr. Ludwin and Ms. Zeitlin, embarrassingly had to explain to each family's relatives and their respective parents, that Mr. Ludwin was not a criminal and Ms. Zeitlin was not a prostitute, because the numerous false and defamatory posts made by Defendant were the first cites to appear in internet search browsers when are family and friends went online to search for our wedding registry.

58. This attack was extremely distressing to Mr. Ludwin and Ms. Zeitlin. Mr. Ludwin began experiencing anxiety attacks for the first time in his life. These anxiety attacks were so extreme that at one point, 911 had to be called and Mr. Ludwin needed an ambulance because he thought he was experiencing a heart attack.

59. Mr. Ludwin has been required to take anti-anxiety medication ever since.

60. Mr. Ludwin and Ms. Zeitlin undertook substantial efforts to have the websites taken down but were unsuccessful and was quoted a price of $43,000 as the cost to have the websites removed by a third party because the websites will not remove them directly, do to current statutory protections, regardless of the falsity of the allegations in the posts.

61. Mr. Ludwin has also expended a significant amount of time correcting the fraudulent accounts created by Defendant, under Mr. Ludwin's name.

62. Ms. Zeitlin was called in for a meeting with her immediate and regional supervisor at her employer to discuss the posts because they do regular internet searches on their employees to insure that the employees are of a certain pedigree, or they would be terminated. While Ms.

Zeitlin was not terminated, she remains in fear of the fact that the internet posts made by Defendant will affect her ability to move up the ladder with her employer.

63. Defendant has refused to take down the posts himself and Plaintiffs continued to be damaged as a result of same, and Defendant should be held accountable for his intentional, malicious and unconscionable actions.

64. All actions precedent to filing of the instant have occurred or have been waived.

### I. Claim for Defamation / Defamation *Per Se*

65. Plaintiffs hereby incorporate paragraphs 1 through 59 as alleged herein.

66. Defendant intentionally made and published false aforementioned statements regarding Mr. Ludwin, Ms. Zeitlin, and Ludwin Law Group, P.A. which caused substantial harm to all Plaintiffs concerned.

67. The Statements charged that Plaintiff has committed an infamous crime; tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; tends to injure Plaintiff one in their trade or profession; and/or charged Plaintiff with having an infectious disease

68. Plaintiffs have been damaged

WHEREFORE Plaintiffs hereby demands Judgement against Defendant for defamation / defamation *per se*, for all actual and consequential damages attributable to Defendant's malicious actions, attorney's fees, costs, punitive damages, if the Court deems them appropriate, and for any further relief that this Honorable Court deems just and proper.

### II. Claim for Malicious Prosecution

69. Plaintiffs hereby incorporate paragraphs 1 through 59 as alleged herein.

70. Elements:

1) Defendant maliciously or without probably cause, commenced or continued an original criminal or civil judicial proceeding against the present Plaintiff, Adam M. Ludwin, Esq.,

2) Defendant was the legal cause of the original proceedings against Mr. Ludwin;

3) The termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the Mr. Ludwin.

4) There was an absence of probable cause for the original proceeding.

5) There was malice on the part of Defendant.

6) Mr. Ludwin suffered damage as a result of the original proceeding.

WHEREFORE Plaintiff, Adam M. Ludwin, Esq., hereby demands Judgement against Defendant for malicious prosecution, for all actual and consequential damages attributable to Defendant's malicious actions, attorney's fees, costs, punitive damages, if the Court deems them appropriate, and for any further relief that this Honorable Court deems just and proper.

### III.   Claim for Intentional Infliction of Emotional Distress

71. Plaintiffs hereby incorporate paragraphs 1 through 59 as alleged herein.

72. Defendant intentionally engaged in extreme and outrageous conduct as aforementioned, and acted with the intent to cause severe emotional distress or with reckless disregard of the high probability of causing severe emotional distress to Plaintiffs; and Defendant's extreme and outrageous conduct was a legal cause of severe emotional distress to Plaintiffs.

73. Defendant's behavior goes beyond all possible bounds of decency and is regarded as shocking, atrocious, and utterly intolerable.

74. The emotion distress experienced by Plaintiffs is of such intensity or duration that no ordinary person should be expected to endure it.

75. As a result of Defendant's actions, Plaintiffs have experienced damages to their reputations, health and have experienced a loss in income, shame, humiliation, mental anguish, and hurt feelings in the past and will experience same in the future.

76. Defendant's primary purpose in making the foregoing statements was to indulge ill will, hostility, and an intent to harm Plaintiffs.

WHEREFORE Plaintiffs hereby demands Judgement against Defendant for intentional infliction of emotion distress, for all actual and consequential damages attributable to Defendant's malicious actions, attorney's fees, costs, punitive damages, if the Court deems them appropriate, and for any further relief that this Honorable Court deems just and proper.

IV.   **Claim for Injunctive relief requiring the removal or de-indexing of the false and defamatory posts from the internet**

77. Plaintiffs hereby incorporate paragraphs 1 through 59 as alleged herein.

78. The aforementioned statements are false defamatory and do not enjoy the protections of freedom of speech.

79. Plaintiffs will continue to be damaged and have no adequate remedies of law if the Court does not order the removal or de-indexing of the false and defamatory statements.

WHEREFORE Plaintiffs hereby demands an order directing the removal or de-indexing of the false and defamatory posts, and for a Judgment against Defendant permanently enjoying Defendant from making or otherwise publishing the statements found to be false and defamatory herein, for attorney's fees, costs, all actual and consequential damages as a result of Defendant's actions, and for any further relief that this Honorable Court deems just and proper.

**CONCLUSION**

It is no surprise that Florida defamation law considers protecting a person's reputation paramount and provides substantial remedies, in particular, for *per se* defamation. The following quote sums up Florida's strong policy in favor of protecting one's reputation from defamation:

> *. . . Florida's unusually high protection of personal reputation derives from the common consent of humankind and has ancient roots. It is highly valued by civilized people. Our state constitution and common law powerfully support it. This is a value as old as the Pentateuch and the Book of Exodus, and its command as clear as the Decalogue: "Thou shall not bear false witness against thy neighbor." The personal interest in one's own good name and reputation surpasses economics, business practices or money. It is a fundamental part of personhood, of individual standing and one's sense of worth . . . For slander per se, reprehensibility is at its highest.*

<u>Lawnwood Medical Ctr. v. Sadow</u>, 43 So.3d 710 (Fla. 4th DCA 2010).

Plaintiffs have been violated by Defendant's malicious, oppressive and intentional disregard of Plaintiffs' rights, and it is directly due to Defendant's heinous and unrelenting actions, and in the spirit of Florida's "unusually high protection of personal reputation" that Plaintiffs have incurred tremendous damage and continue to be damaged by Defendant's actions, that Plaintiffs demand compensation from Defendant in an amount to be determined at trial, that will include punitive damages, which is in excess of $10,000,000 (Ten Million Dollars USD), in addition to the injunctive relief regarding same

***Plaintiffs hereby demand a trial by jury on all matters triable by jury as a matter of right.***

Respectfully submitted,

> By: <u>/s/ Adam M. Ludwin</u>
> Adam M. Ludwin, Esq.
> Ludwin Law Group, P.A.
> 85 S.E. 4TH Avenue, Suite 108
> Delray Beach, Fl 33483
> Office Phone: (561) 455-4455
> Primary Email: adam@ludwinlaw.com
> Secondary Email: taneika@ludwinlaw.com
> *Counsel for Plaintiffs*