UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-81755-Smith/Matthewman

ADAM M. LUDWIN, *et al.*,

    Plaintiffs,

vs.

MATTHEW B. PROMAN,

    Defendant.

_____/

**DEFENDANT MATTHEW B. PROMAN'S MOTION TO STRIKE REPORT
AND PRECLUDE TESTIMONY OF PLAINTIFFS' EXPERT SAMEER SOMAL
AT TRIAL AND INCORPORATED MEMORANDUM OF LAW**

Defendant Matthew B. Proman moves for an order excluding the report and testimony of Sameer Somal, Plaintiffs' purported damages expert pursuant to Federal Rule of Evidence 702.

**I. INTRODUCTION**

This Court should exclude Sameer Somal's evidence because it is unreliable and baseless. While Plaintiffs purport to offer Somal as a "damages" expert, Somal simply provides a series of unsubstantiated and unscientific calculations "[b]ased on . . . mentioned case precedents," arriving at a mind-boggling figure of approximately $12,060,000.00 in damages. *See* Ex. 1, Pls.' Expert Report 117. Setting aside the sheer absurdity of the proposed damages figure, Somal's report and testimony do not survive *Daubert* scrutiny for numerous reasons. First, Somal is not qualified to opine on the law or Plaintiffs' emotional distress, as his experience is solely in digital marking and reputation. Second, Somal's methodology is unreliable, as Somal's suggested damages figure is primarily (if not entirely) based on review of other damage awards in favor of non-parties in unrelated cases. Third, Somal's opinions would not assist the jury in fact. For these reasons, the Court should strike Somal's expert report and preclude his testimony at trial.

## II. BACKGROUND

***The amended complaint***. This action arises out of claims for defamation, as well as three related claims, brought by Plaintiffs Adam M. Ludwin, Ludwin Law Group, P.A., and Joanna Zeitlin against Mr. Proman. *See* Am. Compl. [ECF No. 51] ¶¶ 1–5. Plaintiffs allege Mr. Proman engaged in a campaign of defamation against them following Mr. Ludwin's introduction to Mr. Proman in a federal action in the Eastern District of New York. *See id.* ¶¶ 1, 12, 21. The amended complaint alleges Mr. Proman made defamatory written statements about Plaintiffs that were published "via the internet, blogs, forum, e-mails, facsimile, and other media." *Id.* ¶ 72. As a result of this (alleged) defamation, Plaintiffs assert four claims for relief: (1) defamation / defamation *per se*; (2) tortious interference with business relationship; (3) malicious prosecution; and (4) injunctive relief. *See generally id.*

***The Somal report***. On April 21, 2022, Plaintiffs served an expert report from Sameer Somal, the chief executive officer and co-founder of Blue Ocean Global Technology. *See* Pls.' Expert Report 9. In the report, Somal reached several conclusions, following his review of Mr. Proman's (alleged) online publications and "Internet Defamation Legal Cases":

1. Damage was caused to the Plaintiffs' local, national, and international reputation.
2. Damage was caused to the Plaintiffs' reputation in the United States.
3. Damage was caused to the Plaintiffs' global and international reputation.
4. Without restoration measures, the damage will define the Plaintiffs' professional online identities.
5. Plaintiffs' previous digital presence cannot be fully restored.
6. Statements made by Mr. Proman through his posts are defamatory *per se* and were made with intent to malice.
7. The court documents surfacing online further add to the defamatory posts created by Mr. Proman and are damaging evidence against Mr. Proman.
8. Mr. Proman is a regular offender.

*See id.* 86–106. Somal, admittedly a non-lawyer and non-legal expert, attempted to justify his conclusions by analyzing and citing to entirely unrelated defamation decisions of other courts. *See id.* 17–19, 63–77, 88–93, 109–16; *see also* Pls.' Expert Report App'x F (incorporating over four-

hundred pages of decisional cases). Ultimately, Somal arbitrarily concluded—"[b]ased on the above mentioned case precedents"—Plaintiffs are (supposedly) entitled to $12,060,000.00 in damages. *See* Pls.' Expert Report 116–17.

### III. STANDARD

The admission of expert testimony is governed by Federal Rule of Evidence 702. This rule imposes an obligation on district courts to act as gatekeepers, and district courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). To test the admissibility of an expert's testimony, district courts engage in a "rigorous three-part inquiry": (1) the expert must be "qualified to testify competently regarding the matters he intends to address"; (2) the expert's methodology must be "sufficiently reliable"; and (3) the testimony must "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The party offering the expert testimony bears the burden of proving its admissibility. *See id.*

### IV. ARGUMENT

Somal's report utterly fails to satisfy the requirement that expert evidence be "properly grounded, well-reasoned, and not speculative before it can be admitted." *Frazier*, 387 F.3d at 1262. Because Somal entirely relies on damages awarded to non-parties in unrelated defamation cases to calculate purported damages in this case, Somal simply offers speculation and thus his proposed evidence fails to satisfy the requirement of reliability set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). And by purporting to give evidence on the law of defamation, emotional distress, and the meaning of the words at issue, Somal steps far outside his

supposed area of expertise. For the reasons that follow, this Court should strike his report and preclude him from testifying at trial.

**A. Somal is not qualified to opine on legal conclusions, damages, and emotional distress.**

It is well-established that the subject matter of an expert's opinion must fall within his area of expertise to be admissible. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (expert witness must be "qualified to testify competently regarding the matters he intends to address"); *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, No. 10-61532-Civ, 2011 WL 4055391, at *1 n.2 (S.D. Fla. Sept. 13, 2011) (referencing limitation on expert testimony where it was "outside his area of expertise").

Here, Somal's opinion on damages is that Plaintiffs are entitled to $12,060,000.00 "[b]ased on the above mentioned case precedents[.]" Pls.' Expert Report 116–17; *id.* 67 ("[s]imilar to the above case"); *id.* 72 ("facts of the above case are relevant to Ludwin's case"); *id.* 74 ("[t]hough the facts of the above case are somewhat different"); *id.* 77 ("[i]n the case above"); *id.* 89 (referencing "[a]nother decided case law by the Supreme Court of Florida"); *id.* 92 ("refer[ring] to the case" in Arizona state court); *id.* 92 ("As in the *Hosseini* case above"); *id.* 97 ("A clear assessment of the above cases has led us to the conclusion that . . . Mr. Ludwin and Ms. Zeitlin are entitled to damages."); *id.* 106 ("The above cases clearly indicate the in-depth damage . . . [to] all the three Plaintiffs[.]"); *id.* 112 ("Drawing inferences from the following United States cases, it is safe to say that awarding substantial damages to the Plaintiffs, Mr. Ludwin, his firm, Ludwin Law Group, and his wife, Ms. Zeitlin, is justified[.]"); *id.* 112 (applying "[s]imilar logic" from an unrelated case); *id.* 114 (referencing "[t]he above cited cases"); *id.* 116 (providing chart of "Damages Cited from Internet Defamation Cases").

Essentially, Somal's damages opinion is based on what he extracts from his review of a seemingly random selection of unrelated cases involving non-parties, not on his area of expertise—

"digital reputation client situations." *Id.* 5. Somal is not qualified to render expert opinions on the damages allegedly caused to Plaintiffs simply by reviewing, analyzing, and opining on a line of defamation authority untethered to the circumstances and facts presented here. Somal is not a legal expert or lawyer and is not licensed to practice law in Florida or in any other state. *See id.* 9 (supplying brief biography). His work experience is primarily in marketing, web development, and reputational management. *See id.* Somal is thus not qualified to testify concerning defamation law or legal analysis, with which he has had no direct experience or involvement. *See Simon v. Healthsouth of Sarasota Ltd. P'ship*, No. 8:12-cv-236, 2021 WL 268496, at *4 (M.D. Fla. Jan. 27, 2021) (excluding rehabilitation physician's testimony regarding legal issues because he had no "legal experience or training" to "competently testify"); *Tindall v. H & S Homes, LLC*, No. 5:10-cv-044, 2012 WL 3242128, at *6 (M.D. Ga. Aug. 7, 2012) (account and finance expert could not testify as an expert on legal issues where he did not have "any legal experience or training").

Similarly, Somal wanders even further outside his expertise when he purports to offer an opinion on the emotional harm or psychological damages caused to Plaintiffs by the alleged publications. *See* Pls.' Expert Report 110 ("Mr. Ludwin and Ms. Zeitlin have experienced significant psychological damage."); *id.* ("The Plaintiffs have suffered severe psychological damages."). Somal is not a practicing clinical psychologist and appears, based on the brief biography provided, to not be licensed as one in Florida or in any other state. *See id.* 9. Somal is not qualified to testify concerning Plaintiffs' alleged psychological harm. *See United States v. Crosby*, 713 F.2d 1066, 1077 (5th Cir. 1983) (affirming trial court's refusal to qualify counselor as an expert in post-traumatic stress disorder on the ground that only psychiatrists could qualify as diagnostic experts); *Cano v. 245 C & C, LLC*, No. 19-21826-Civ, 2021 WL 684188, at *5 (S.D. Fla. Feb. 19, 2021) ("Plaintiffs point to nothing in the record showing that [the proposed expert]

has any education or training in evaluating the cause or extent of psychological and emotional distress. . . . As such, the Court finds that Plaintiffs have failed to establish that [the proposed expert] is qualified to give expert testimony on Plaintiffs' psychological, emotional, and personal distress.").

In short, Somal is not qualified to testify as an expert in this case.

**B. Somal's methodology is unreliable.**

Even if this Court finds Somal possesses the requisite expertise to opine on Plaintiffs' supposed damages or emotional harm, Somal's employed methodology is completely unreliable. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) (qualified expert testimony is "admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation"). Somal does not satisfy this standard.

From a foundational standpoint, Somal concedes his damages calculation is based entirely on damage awards "mentioned [in] case precedents." Pls.' Expert Report 117. There is nothing more to his analysis. Somal, a non-lawyer, simply reviews and discusses cases involving none of the parties to this action, varying circumstances, and differing publications and facts. Somal's comparison of unrelated damage awards in decisions involving non-parties cannot be used as a reliable measure of reputational harm, compensatory, or punitive damages sustained by Plaintiffs in this action. *See id.* 17–19, 63–77, 88–93, 109–16. Certainly, there are a number of factors that may have led to those damage figures, all of which Mr. Proman (and, by extension, this Court and a jury) are left to speculate the reasons for and which are unrelated to the claims asserted in this action by Plaintiffs. At best, Somal is a self-proclaimed expert in the field of extrapolating damage awards from cases that have zero relevance to the facts and the parties in this action. Such testimony cannot be admitted as an expert opinion in this case. *See Gastaldi v. Sunvest Resort*

*Communities, LC*, 709 F. Supp. 2d 1299, 1304 (S.D. Fla. 2010) (noting that methodologically flawed expert damage reports may be excluded under *Daubert*); *cf. Fleming v. Elliot Sec. Sols., LLC*, No. cv 19-2348, 2020 WL 7495551, at *2 (E.D. La. Dec. 21, 2020) (finding that "evidence concerning class claims and compensation of other individuals and any evidence related to the prior dismissed [] case is inadmissible regarding Plaintiffs' claims against Defendants").

Somal's speculative damages calculation is not sufficient to meet the rigorous test for admissibility of expert opinions that *Daubert* and the Federal Rules of Evidence require.

## C. Somal's report does not assist the trier of fact and must be excluded.

Neither this Court nor any jury needs an expert to assist it in determining the points offered in Somal's opinion. *See Daubert*, 509 U.S. at 591 (expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue"). The fact witnesses can provide the evidence as to what transpired; and the Court and the jury can characterize that evidence.

***Somal's opinions about the meaning of the alleged publications should be excluded***. At various points in the report, Somal opines that Mr. Proman's alleged statements are defamatory, or gives his views on what the statements and publications about Plaintiffs mean. *See, e.g.*, Pls.' Expert Report 18 (providing bullet point list of the meaning of the alleged defamatory statements); *id.* 20–28 (concluding alleged statements are defamatory); *see also id.* 39, 84–85. These opinions should be excluded because members of a jury are perfectly capable of interpreting Mr. Proman's alleged publications themselves. *See, e.g.*, *Seropian v. Forman*, 652 So. 2d 490, 498 (Fla. 4th DCA 1995) (trial court abused discretion admitting evidence of meaning because "[i]f *influence peddling* conveyed the obloquy that plaintiff suggests, that fact should be readily understood by the ordinary jury without a political scientist swearing that it does" (original emphasis)); *see also McCabe v. Rattiner*, 814 F.2d 839, 843 (1st Cir. 1987) (affirming exclusion of expert testimony

on meaning of "scam" because it "would not assist the trier of fact" (quotation marks omitted)); *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1378 (S.D. Fla. 2005) (noting expert testimony should be excluded where it "is simply his opinion of what he would do if he were a juror considering the facts which need no interpretation by an 'expert.'"); *Tilton v. Cap. Cities/ABC, Inc.*, 938 F. Supp. 751, 753 (N.D. Okla. 1995) (excluding testimony on the meaning of words because "the jury is clearly capable of determining what the average viewer from a one time viewing understood as expressed or implied by the *PrimeTime Live* broadcasts in regard to Plaintiff").

**Somal should not be permitted to testify to the costs of a reputational repair campaign.** Somal's opinion that it would cost approximately $1.3-1.5 million to repair Plaintiffs' reputations would not assist the jury but rather mislead and confuse the jury. *See* Pls.' Expert Report 109. On this point, *Daniels v. HSN, Inc.*, No. 8:18-cv-3088, 2020 WL 533927 (M.D. Fla. Feb. 3, 2020), is instructive. There, the court held special damages for the amount of money it would cost to repair a reputation as opposed to the amount actually spent are not recoverable, because they are not actual out of pocket losses. *See id.* at *6–7 (collecting cases). So too here. Plaintiffs have not proffered any evidence that they actually spent close to Somal's "[e]stimated costs for suppression campaign" and thus the damages proffered by Somal are not cognizable as a matter of law. Pls.' Expert Report 109; *see also Daniels*, 2020 WL 533927, at *6–7. Any evidence of the costs of reputational harm campaigns will not assist the trier of fact.

**Somal should not be permitted to offer a damages calculation based on speculative review of unrelated cases.** The trier of fact in this case does not require expert assistance in describing damage awards in unrelated cases involving none of the parties to this action. *See* Pls.' Expert Report 116–17. Permitting Somal to simply testify to his own comparison of damages in

other unrelated cases and any harm caused in this case, in the absence of any reliable methodology or scientific inquiry, would effectively usurp the fact-finding role of the jury and permit the jury to hear unsupported speculations. *Cf. Dasso Int'l, Inc. v. Moso N. Am., Inc.*, No. cv 17-1574, 2021 WL 3476197, at *30 (D. Del. July 25, 2021) ("[T]he alleged defamation and damages associated with th[e] [defamatory] document are questions of fact for the jury."); *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 227 (E.D.N.Y. 2010) ("It is settled that the amount of damages to be awarded in a defamation action is peculiarly within the jury's province[.]"). This speculative testimony should be excluded.

**Somal should not be permitted to offer opinions on Mr. Proman's state of mind**. Somal offers various baseless conjectures regarding Mr. Proman's state of mind, intent, and motives. *See, e.g.*, Pls.' Expert Report 28 ("The attempts to destroy Mr. Ludwin's reputation were malicious and intentional[.]"); *id.* ("Mr. Proman's proactively exhausting many avenues to intentionally target and harm Mr. Ludwin, his firm, Ludwin Law Group, and his wife, Ms. Zeitlin."); *id.* 70 ("[H]e intentionally defamed Mr. Ludwin and Ms. Zeitlin out of malice."); *id.* 84 ("intentional internet defamation"); *id.* 84 ("Mr. Proman's intentional acts have been catastrophic to Mr. Ludwin's professional reputation."); *id.* 95 ("Defendant had intentionally, falsely, and maliciously accused Mr. Ludwin of threatening to kill him."); *id.* 95 ("The Defendant's actions were intentional, were with malice, and were made with reckless disregard for the truth."); *id.* 109 ("intentional [] harm"). These topics are clearly off limits for a purported expert like him. Indeed, case law makes clear that such testimony with regard to Mr. Proman's state of mind, intent, or motives are inadmissible. *See United States v. Gillis*, 938 F.3d 1181, 1194 (11th Cir. 2019) ("[A]n expert may not opine on the defendant's intent."); *Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) ("[W]e find no error in the court's decision to strike the portions of Radigan's testimony which contain legal

conclusions as to another person's state of mind."); *Romano v. John Hancock Life Ins. Co. (USA)*, No. 19-21147-Civ, 2022 WL 1447733, at *5 (S.D. Fla. May 9, 2022) ("Among these off-limits topics, experts may not offer opinions on a person's state of mind.").

***Somal should not be permitted to offer legal conclusions or opinions***. Throughout his report and testimony, Somal impermissibly opines on the ultimate legal conclusions at issue in this case. These impermissible legal conclusions pervade Somal's expert report. *See* Pls.' Expert Report 16 ("defamation victims such as Adam Ludwin, Joanna Zeitlin, and the law firm of Ludwin Law Group, P.A."); *id.* 28 ("Mr. Proman also made false statements under oath in his complaint for injunctive relief against Mr. Ludwin."); *id.* 32 ("It is clear that the negative information disseminated by Mr. Proman was rooted in malice."); *id.* 32 ("Defendant's defamatory posts"); *id.* 40 ("Defendant's fraudulent scheme"); *id.* 84 ("The posts created on various websites against Mr. Adam Ludwin and his wife, Ms. Joanna Zeitlin, are slanderous and defamatory[.]"); *id.* 84 ("The defendant is directly responsible"); *id.* 84 ("It is evident that such a defamatory campaign initiated by Defendant is entirely based on intent of malice[.]"); *id.* 85 ("The Defendant's defamatory actions against all the three Plaintiffs were known to be untrue and purposely defamatory."); *id.* 88 ("Statements made by Defendant through his posts are Defamatory *Per Se* and were made with an Intent of Malice."); *id.* 89 ("The above-mentioned false statements originated and were reposted several times by the Defendant and qualify as defamatory *per se* according to the Florida laws."); *id.* 91 ("These allegations without a doubt qualify as defamatory *per se*."); *id.* 95 ("With such a clear portrayal of Mr. Proman's intent of malice, Mr. Ludwin and Ms. Zeitlin are entitled to receive adequate damages[.]"); *id.* 97 ("They have been maliciously defamed via false online posts and statements made by Mr. Proman."); *id.* 105 ("Defendant's malicious intent to harm the Plaintiffs and act deliberately, with the specific intent to injure the Plaintiffs."); *id.* 110 ("Defendant's

malicious acts in the form of various posts[.]").

These "opinions" expressed by Samol are not opinions at all but rather impermissible legal conclusions (from a non-lawyer) fraught with Somal's own legal interpretations. Indeed, if testimony "tracks the language of the applicable statute or uses a term that has a specialized legal meaning that is more precise than the lay understanding of the term, the testimony is an impermissible legal conclusion." *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (cleaned up). This is precisely what Somal has done here. By using the terms "defamation *per se*," "defamation," "slanderous," "malice," and "malicious intent," Somal has crossed the line from opinion to improper legal conclusions. For this reason, Somal's opinions are inadmissible and his expert report must be stricken. *See United States v. Long*, 300 F. App'x 804, 814 (11th Cir. 2008) ("An expert witness may not testify as to his opinion regarding ultimate legal conclusions."); *Romano*, 2022 WL 1447733, at *1 ("It is well settled that experts are not permitted to offer legal conclusions as opinions.").

To recap, none of Somal's opinions will assist the jury and thus all must be excluded.

## V. CONCLUSION

Somal's opinions are exactly the type of testimony that *Daubert* was meant to prevent from reaching the jury. Somal is unqualified to give his proffered opinions, his methodology is unreliable and completely speculative, and his opinions are likely to mislead the jury. For all of these reasons, the Court should exercise its gatekeeping function and strike Somal's report and testimony and preclude him from testifying at trial.

## **LOCAL RULE 7.1(a)(3) CERTIFICATION**

The undersigned counsel hereby certifies that Plaintiffs and Defendant have met and conferred in person and complied with Local Rule 7.1(a)(3) prior to submitting this motion. Plaintiffs oppose the relief requested herein.

Dated: May 25, 2022

Respectfully Submitted,

*/s/ Daniel S. Gelber*
DANIEL S. GELBER
Florida Bar No. 512877
dan@gsgpa.com
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
ANDREW T. FIGUEROA
Florida Bar No. 1002745
afigueroa@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

*Counsel for Defendant Matthew Proman*