UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-81755-RS

ADAM M. LUDWIN, ESQ.,
LUDWIN LAW GROUP, P.A.,
and JOANNA ZEITLIN,

    Plaintiffs,

v.

MATTHEW B. PROMAN,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross-motions for summary judgment: (1) Defendant's Motion for Summary Judgment [DE 203], Plaintiffs' Response in Opposition [DE 208], and Defendant's Reply in Further Support [DE 213], and (2) Plaintiffs' Motion for Summary Judgment [DE 205], Defendant's Response in Opposition [DE 210], and Plaintiffs' Reply in Further Support [DE 214]. For the reasons that follow, Plaintiffs' Motion will be denied, and Defendant's Motion will be granted in part and denied in part.

**I.   MATERIAL FACTS**

At bar is a defamation action brought by two individuals and a law firm against an individual Defendant. Plaintiffs are attorney Adam M. Ludwin, his wife Joanna Zeitlin, and his law firm, Ludwin Law Group, P.A. The individual Plaintiffs are both citizens of Florida, while Plaintiff-firm is organized under the laws of Florida with its principal place of business in Florida. Attorney Ludwin is managing counsel of Ludwin Law Group, P.A. Zeitlin is a medical device sales

representative. Defendant is Matthew B. Proman of California.[1]

Plaintiffs were first introduced to Defendant during the course of a separate civil action in the United States District Court for the Eastern District of New York (EDNY). Ludwin and his law firm were retained to represent a party in the EDNY action against Proman. Plaintiffs allege that, soon after the start of the representation, Proman told Ludwin that Proman would attack Ludwin's family if Ludwin did not accept a settlement offer on behalf of his client in the EDNY action. (Pls.' Ex. A [DE 205-2].)

Thereafter, beginning on September 26, 2018, Proman embarked on a campaign against Ludwin, his law firm, and his family, with several posts on public websites. (Pls.' Ex. B [DE 205-3].) Proman published Ludwin's private cell-phone number, email address, and business address on the websites, and stated therein that Ludwin had engaged in "fraudulent conduct" such as submitting a "false loan application," "defrauding our banking institutions," and "stealing our customers [sic] banking information and opening credit cards in their names." (*Id.* at 25.) The next day, upon discovering the posts on the websites, Ludwin sent a "cease and desist" letter to Proman. (Pls.' Ex. F [DE 205-7].)

Proman continued his campaign by posting on the same websites on October 1 that Ludwin "has a history of issues with controlled substances and driving while intoxicated." (Pls.' Ex. B at 22.) Additionally, Proman posted false statements about Zeitlin on a separate website, including that she was "an escort / prostitute" who had been "working the game for the past 10 years" and had become well known for "kinky role-playing services" and "anything goes swinger parties." (*Id.* at 14.) The website posts continued with a post on October 3 claiming Ludwin had been arrested and charged with "securities fraud and money laundering in relation to fraudulent sale of shell companies," (*id.* at 26) and that he was "armed and dangerous," (*id.* at 22). The posts about Zeitlin

---

[1] The Court omits citations to the record where a fact is undisputed.

2

also continued, with Proman posting on October 8 that Zeitlin was a "floozy," "approachable for the right price," and had tested positive for sexually-transmitted diseases. (*Id.* at 5.) At least some of the website posts have been traced by an Internet Service Provider to an IP address that links directly to Proman's physical address. (Ex. C to Pls.' Am. Compl. at 10 [DE 51-3].)

The website postings, coupled with Proman's threats, led Ludwin to report these incidents to the Federal Bureau of Investigation (FBI). (Pls.' Ex. A.) The FBI initiated a formal investigation into Proman's actions beginning on April 12, 2019. (*Id.*) On that date, Ludwin and Proman had two contentious phone calls that were recorded by the FBI. (*Id.*) Proman threatened Ludwin during the calls, stating that he would make Ludwin and his family "suffer," and that he was "working on making sure your life is very difficult." (Ex. B to Pls.' Am. Compl. [DE 51-2].) Proman, feeling threatened himself after the phone calls with Ludwin, took the issue to the Superior Court of the State of California, where he filed a civil action for harassment against Ludwin and requested the court enter a temporary restraining order to enjoin Ludwin from communicating with Proman. (Pls.' Ex. G [DE 205-8].) In support of his complaint, Proman averred, under penalty of perjury before the California state court, that Ludwin had threatened to kill Proman by shooting him in the head, that Ludwin knew precisely where and when to find Proman, and that Ludwin knew how to kill someone without getting caught. (Ex. A to Pls.' Am. Compl. at 8 [DE 51-1].) The California state court entered a preliminary injunction and "Order of Protection" against Ludwin based on this evidence. (Pls.' Ex. G.) A month later on May 17, Proman filed a complaint against Ludwin with The Florida Bar, utilizing the injunction procured in California as a basis for The Florida Bar complaint. (Ex. A to Pls. Am. Compl. at 17.) On August 2, 2019, the FBI released the transcripts of the phone recordings from April 12; the transcripts showed that it was in fact Proman who had made threats of physical violence against Ludwin during the calls. (Ex. B to Pls.' Am. Compl.) As a result of this new evidence, the California civil action for harassment against Ludwin was

dismissed. (Pls.' Ex. G.)

On September 24, 2020, a felony criminal complaint against Proman was filed in the Superior Court of the State of California. (Ex. A to Def.'s Mot. Stay [DE 12].) The felony complaint included five criminal counts, two of which were directly related to Ludwin's accusations: Count I alleged "Perjury by Declaration" related to Proman's prior California Superior Court filings regarding Ludwin and Count II alleged "Identity Theft" related to Proman's unlawful procurement and use of Ludwin's personal identifying information. (*Id.*) On December 16, 2021, the California criminal action was resolved when Proman entered a "No Contest" plea to a separate count of the complaint; as part of the plea arrangement, the remaining counts in the felony complaint, including those related to Ludwin, were dismissed. (Def.'s Notice of Disposition [DE 112].) In accepting the plea arrangement, the California Superior Court imposed a sentence of two years' probation and ordered Proman make restitution payments to Ludwin. (*Id.*)

Ludwin was negatively affected by the website postings, phone calls, judicial proceedings, and bar complaint levied by Proman: he began experiencing anxiety attacks, chest pain, and nausea, and at one point was taken to the hospital in an ambulance as a result of these symptoms. (Pls.' Ex. D [DE 205-5].) Ludwin was prescribed anti-anxiety medication by his physician following another hospital visit. (Pls.' Ex. E [DE 205-6].) For her part, Zeitlin states that she has incurred emotional harm and anguish as a result of the website postings, and that she has lost unidentified business opportunities during the course of the ordeal. (Def.'s Ex. A [DE 204-1].)

Proman has submitted Responses to Interrogatories and Requests for Production showing that Ludwin Law Group's claims for defamation mirror those claims brought by Attorney Ludwin and Zeitlin. This evidence shows that the same allegedly defamatory statements form the basis for both Ludwin and Ludwin Law Group's claims. (*Compare* Def.'s Ex. D ¶ 5 [DE 204-4] *with* Def.'s Ex. B ¶ 5 [DE 204-2].)

Plaintiffs filed their operative Amended Complaint [DE 51] against Proman on June 24, 2021. The Amended Complaint brings four counts: (1) "Claim for Defamation / Defamation *Per Se*"; (2) Tortious Interference with Business Relationship; (3) Malicious Prosecution; and (4) "Claim for Injunctive Relief."

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal marks and citation omitted). A fact is material if, under the applicable substantive law, it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the initial responsibility of supporting its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see*

*also Celotex* 477 U.S. at 324. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. DISCUSSION

Defamation is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (internal citations omitted). To prove defamation under Florida law,[2] a plaintiff must establish the following elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022); *Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A-580B). Words are defamatory under Florida law when "they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (internal citations omitted). Where a statement is ambiguous or subject to multiple interpretations and one is defamatory, it is for the jury to decide whether the statement is in fact defamatory. *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1463 (11th Cir. 1984).

Defamation *per se* does not require any additional explanation to prove the defamatory nature of the statement. Florida law holds that certain statements are so harmful in nature that they are

---

[2] Because the Court enjoys subject-matter jurisdiction to hear this matter by virtue of the diversity of citizenship statute, 28 U.S.C. § 1332, Florida law applies to the parties' dispute. *See Rando v. Gov't Employees Ins. Co.*, 556 F.3d 1173,1176 (11th Cir. 2009) (holding that a federal district court sitting in diversity applies the law of the forum state in which it sits).

presumed defamatory as a matter of law. *Montgomery v. Knox*, 3 So. 211, 217 (Fla. 1887). In a defamation *per se* action, the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact. *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953). The plaintiff is therefore not required to allege general damages, because the harm is readily apparent. *Id.* A publication may be defamation *per se* when, considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession. *Richard v. Gray*, 62 So. 2d 597 (Fla. 1953). By contrast, in a defamation action, the words used, given their natural and common meaning, may not be inherently injurious, but rather may be harmful as a consequence of extrinsic facts, such as innuendo. *Scobie v. Taylor*, No. 13-CV-60457, 2013 WL 3776270 (S.D. Fla. July 17, 2013) (internal citations omitted). Therefore, in a defamation action, the plaintiff must plead actual economic damage. *Campbell*, 66 So. 2d at 497.

Turning now to the case at bar, Plaintiffs' first count alleges a claim for "Defamation / Defamation *Per Se*" against Defendant. In effect, Count I pleads two distinct claims – defamation and defamation *per se* – on behalf of three different Plaintiffs. The Court will address the claims of each Plaintiff separately.

    A.    **Ludwin Law Group's Defamation Claims**

Although Plaintiffs bring claims on behalf of both Ludwin and Ludwin Law Group, the statements made about Plaintiff Ludwin Law Group are not distinct from those made about Plaintiff Ludwin. In fact, Plaintiffs do not allege any defamatory statement that actually names Ludwin Law Group. All of Proman's allegedly defamatory statements name either Attorney Ludwin or Zeitlin, not the law firm. Statements that Plaintiffs claim defame Ludwin Law Group concern Attorney Ludwin in his individual and professional capacity. For instance, the statements made by Proman

7

concerning Ludwin's allegedly fraudulent conduct are just that, statements concerning Ludwin's conduct. These statements do not explicitly name the law firm as the entity behind the alleged fraud, nor do the statements implicitly allege that it was the law firm that procured false bank accounts or applied for fraudulent loans on behalf of clients.

In short, Proman's statements are those "of and concerning" a private person, and not a business entity. *See Jones v. Cmty. Newspapers, Inc.*, No. 3:05-CV-240-J-16MMH, 2006 U.S. Dist. Lexis 61211 (M.D. Fla. Aug. 29, 2006), *aff'd*, 2007 U.S. App. Lexis 9377 (11th Cir. Apr. 25, 2007) (granting summary judgment for the defendant where the plaintiff could not show that an allegedly defamatory article was of and concerning the plaintiff individually, and not her business); *see also McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793 (Fla. 4th DCA 1986). In *McIver* summary judgment was entered for the defendant where the allegedly defamatory news article at issue only mentioned the plaintiff-business once in relation to the plaintiff-business owner. *McIver*, 489 So. 2d at 793-794. The *McIver* Court affirmed summary judgment for the defendant where the plaintiff-business could not show that the allegedly defamatory statements were "of and concerning" it, as opposed to the plaintiff-business owner. *Id.* at 794. Similarly, the record here is devoid of any allegedly defamatory statements made about Plaintiff-law firm specifically, and Defendant has shown that Ludwin Law Group's claims are based on the same allegedly defamatory statements on which Ludwin's claim is based. Plaintiffs have not pointed to any statements by Proman that are about Ludwin Law Group. Accordingly, the Court will dismiss all defamation claims brought by Ludwin Law Group.

### B. Zeitlin's Defamation *Per Se* Claim

Zeitlin moves for summary judgment on her defamation *per se* claim on grounds that the comments by Proman were unequivocally defamatory, false, and concern her profession, trade, and business. Proman argues that Zeitlin's claim fails as a matter of law because the comments do not

concern her trade, profession, or business as a medical device representative, and he moves for summary judgment on this basis.

Plaintiffs have chosen to include Zeitlin's defamation *pro se* claim within Plaintiffs' larger Count I for "Defamation / Defamation *Per Se*," and they have pled similar theories of liability for each claim – namely, that Defendant's statements are actionable *per se* because they tend to injure one in the exercise of their trade or profession.[3] However, Plaintiffs have not specifically identified how Zeitlin was injured in her trade or profession. Zeitlin's profession is distinct from Ludwin's profession, and statements that tend to cause injury to an attorney in the exercise of his profession are different from statements that would cause harm to a sales representative in the exercise of her profession. For example, a statement that one is untrustworthy may be harmful to individuals in both professions, while a statement that one lacks investigative capacity may be harmful to an attorney but not a sales representative. Here, offensive as the comments may be, none explicitly relate to Zeitlin's ability to practice her trade as a sales representative for a medical device company. For this reason, Plaintiff's Motion for Summary Judgment on Zeitlin's defamation *per se* claim must be denied. Nevertheless, whether these comments negatively impacted Zeitlin in the performance of her trade, and whether the statements in this context are those that "tend to injure one in her trade or profession" and are therefore actionable *per se* are questions of fact for a jury to decide.

C.   **Ludwin's Defamation *Per Se* Claim**

Plaintiffs argue that Proman's allegedly defamatory statements tend to injure Ludwin in the exercise of his trade or profession as an attorney, and they move for summary judgment on this basis. Plaintiffs point to the statements made by Proman regarding Ludwin's trustworthiness as legal counsel, his capacity to safeguard client finances, and his propensity for violence as examples of

---

[3] Although a false statement charging one with a sexually-transmitted disease may constitute defamation *per se* under a theory of liability premised on infectious disease or infamous crime prongs, Plaintiffs have not pled this theory in their Complaint and, as such, the Court will not entertain it.

9

defamatory statements that tend to injure an individual practicing in the legal profession. Proman counters that Plaintiffs are not entitled to summary judgment on Ludwin's defamation *per se* claim because Plaintiffs have failed to present evidence of the falsity of those statements. According to Proman, Plaintiffs have not identified any specific statements that Proman published about Ludwin that were in fact false.

The Court will deny the parties' cross-motions for summary judgment as to Ludwin's claim for defamation *per* se because genuine disputes of material fact remain as to whether the statements published by Proman were in fact false, and whether those statements were in fact defamatory. Falsity is a key element to any claim for defamation. If a defendant can show that the statement at issue is true, then this serves as a defense to a claim for defamation. Fla. Const. art. I, § 4. Here, Plaintiffs have not demonstrated that Proman's statements about Ludwin's abilities as an attorney were false. Whether the statements were true or false are questions of fact; Ludwin's defamation *per se* claim thus turns on issues best left for a jury to determine. It is for a jury to decide whether the statements made by Proman about Ludwin are false, and whether they are defamatory (in that they tend to subject one to hatred, distrust, ridicule, contempt or disgrace, or tend to injure one in one's business or profession). Because there are genuine disputes of material fact regarding the statements at issue, summary judgment on Ludwin's defamation *per se* claim will be denied.

 **D.     Ludwin and Zeitlin's Defamation Claims**

Plaintiffs' Motion for Summary Judgment as to the defamation claims of Ludwin and Zeitlin fails for similar reasons. Apart from a single conclusory statement in their Motion,[4] Plaintiffs have not identified any record evidence that demonstrates the falsity of Proman's allegedly defamatory statements. Furthermore, a successful claim for defamation must prove actual damages. *Johnston*,

---

[4] Plaintiffs argue in their Motion that "Defendant's statements are unequivocally defamatory because they are false; about Plaintiffs; transmitted to a third party; and caused injury to Plaintiffs." (Pls.' Motion at 11.)

36 F.4th at 1275. Plaintiffs have not shown how they were damaged by Proman's allegedly defamatory statements, or to what extent. These deficiencies effect both claims for defamation brought by Ludwin and Zeitlin.

Seemingly aware that their Motion suffers from these shortcomings, Plaintiffs impermissibly attempt to switch the burden of proof onto Defendant by arguing that it is Proman who must prove that the statements were truthful.[5] This is not the standard in defamation cases, where plaintiffs carry the burden of proving the merits of their claims. *Id.* Only where a moving party's burden has been met does the burden shift to the non-moving party to demonstrate that summary judgment is not warranted. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Plaintiffs have not met their burden here, as it is unclear whether the statements at issue were false. *See Thomas v. City of Delray Beach, Fla.*, No. 07-CV-80258, 2007 WL 9701798 (S.D. Fla. Sept. 11, 2007) (defamation claim failed where plaintiff "offered no evidence that false statements, a requirement of a prima facie defamation claim, were made."). Additionally, even if Plaintiffs demonstrated the falsity of Proman's statements, there remain questions for the jury as to whether those statements were defamatory in nature and whether Plaintiffs suffered damages as a result. Because Plaintiffs have not met their burden of proof with respect to Ludwin and Zeitlin's defamation claims, Plaintiffs' Motion must be denied.

    E.    **The Single Publication Rule**

Defendant is entitled to summary judgment on Plaintiffs' Count II (Tortious Interference with Business Relationship) because of Florida's single publication rule. That rule precludes a plaintiff from asserting multiple causes of action when they arise from the same publication upon

---

[5] Plaintiffs argue in their Motion that "Defendant has presented no evidence that any of the statements made were truthful." (Pls.' Motion at 12.)

which plaintiff's defamation claim is based. *Fridovich v. Fridovich*, 598 So. 2d 65, 69-70 (Fla. 1992).

Pursuant to the single publication rule, courts dismiss concurrent counts for related torts based on the same publication and underlying facts as the defamation count. *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). Florida courts have consistently held that the single publication rule precludes the recasting of defamation claims as additional, distinct causes of action in tort if all claims arise from the same publications and underlying facts. *See Fridovich*, 598 So. 2d at 70 (explaining that a "plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as outrageous"); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) (holding counts for tortious interference and emotional distress were barred under Florida's single publication rule because they were based on the same facts as plaintiff's defamation claim).

Plaintiffs argue that the single publication rule is inapplicable in this case because Proman made numerous independent publications that were defamatory, as opposed to a single publication that was reproduced by the mass media. Proman counters that Plaintiffs are mistaken regarding the application of the rule and that Florida's single publication rule applies here to limit Plaintiffs' claims to a single count in tort based on the allegedly defamatory statements.

Because Plaintiffs' claim in Count II arises out of the same publication and underlying facts as Plaintiffs' defamation claim, Florida's single publication rule bars Plaintiffs' claim, and Defendant is thus entitled to summary judgment on Count II. The same operative facts pervade all of Plaintiffs' claims in Count I and Count II, and the essence of the alleged wrongful conduct is grounded in defamation. Plaintiffs' claim in Count II revolves around the allegedly defamatory statements, and whether those statements impermissibly interfered with Plaintiffs' business

relationships. Plaintiffs have incorporated into Count II all facts as pled in support of Count I without distinction, further underscoring the intertwined nature of their respective claims. The single publication rule thus applies to Plaintiffs' Count II, and summary judgment will be entered on that Count for Defendant.

As to Count III, although Plaintiffs have labeled the claim in their pleadings as one for "malicious prosecution," the allegations in Count III support a claim for intentional infliction of emotional distress. Further, in their Motion papers they have repeatedly argued the merits of an "intentional infliction of emotional distress" claim. The Court will accept the substance of the claim over its title and construe Count III as a claim for intentional infliction of emotional distress. *See Conden v. Royal Caribbean Cruise Ltd.*, No. 20-CV-22956, 2021 WL 4973584, at 8 (S.D. Fla. Feb. 22, 2021) (explaining "the substance of the claim is more important than its title").

Unlike Count II, Plaintiffs' Count III is not subject to the single publication rule. Count III alleges that Proman engaged in outrageous conduct with the intent to cause Plaintiffs severe emotional distress by, amongst other things, utilizing the judicial process to obtain a fraudulent protective order against Ludwin. This conduct is distinct from the conduct giving rise to Plaintiffs' Count I for defamation. In Count I, Plaintiffs' claims revolve around the publication of allegedly false statements that Plaintiffs argue have injured them in their profession. By contrast, in Count III, Plaintiffs argue that their emotional distress occurred as a result of Proman's conduct following the allegedly defamatory campaign, particularly the phone conversations tapped by the FBI and the California judicial proceedings. The events supporting Plaintiffs' claims in Count III occurred more than six months following the events supporting Plaintiffs' claims in Count I. Additionally, the phone conversations and the California judicial proceedings were not published by Proman in the same ways as the website postings that form the basis for Count I. Thus, the events supporting Count III cannot be interpreted as arising from a single publication or the same operative set of facts as

those supporting Count I.  Because the single publication rule does not apply to Plaintiffs' Count III, and because there are genuine disputes of material fact regarding whether and to what extent Proman's conduct caused Ludwin's emotional distress, Proman's Motion for Summary Judgement on Count III will be denied.

    **F.**    **Injunctive Relief**

Finally, turning to Count IV of the Amended Complaint, Plaintiffs' Claim for Injunctive Relief, Proman is entitled to summary judgment on this claim because injunctive relief, by its very design and definition, is a remedy to a well-pled cause of action and not a stand-alone cause of action in and of itself.  *See Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (noting that an injunction is a remedy to the infringement of an independent legal right); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-CV-61019, 2018 WL 3730876 (S.D. Fla. July 5, 2018) (noting "there are an abundance of cases establishing that injunctive relief is a remedy, not a separate cause of action").  Plaintiffs' Count IV fails to state an independent cause of action and thus fails as a matter of law; Proman is therefore entitled to summary judgment on this count.

For the foregoing reasons, it is hereby,

**ORDERED** that:

1.     Plaintiffs' Motion for Summary Judgment [DE 205] is **DENIED**.

2.     Defendant's Motion for Summary Judgment [DE 203] is **GRANTED in part and DENIED in part**.

    a.     Defendant's Motion for Summary Judgment on Count I of Plaintiffs' Amended Complaint [DE 51] is **GRANTED in part and DENIED in part**.

        i.     The Motion is **GRANTED** as to Plaintiff Ludwin Law Group, P.A.'s claims in Count I.  Ludwin Law Group, P.A.'s claims in Count I are dismissed.

      ii. For all other claims in Count I, including Plaintiff Zeitlin's claims for defamation and defamation *per se*, and Plaintiff Ludwin's claims for defamation and defamation *per se*, summary judgment is **DENIED**.

b.     Defendant's Motion for Summary Judgment on Counts II and IV of Plaintiffs' Amended Complaint is **GRANTED**.

c.     Defendant's Motion for Summary Judgment on Count III of Plaintiffs' Amended Complaint is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida this 24th day of January, 2023.

*[signature]*

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record